UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DWAYNE W.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

1:21-CV-00093-LJV
DECISION & ORDER

---

On January 20, 2021, the plaintiff, Dwayne W. ("Dwayne"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On December 20, 2021, Dwayne moved for judgment on the pleadings, Docket Item 8; on May 10, 2022, the Commissioner responded and cross-moved for judgment

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Dwayne applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

on the pleadings, Docket Item 9; and on June 21, 2022, Dwayne replied, Docket Item 10.

For the reasons that follow, this Court denies Dwayne's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

Dwayne argues that the ALJ improperly evaluated the opinions of Daniel Miori, PA-C, and Dulan Hailoo, M.D.  Docket Item 8-1 at 10-13.  More specifically, Dwayne suggests that the ALJ mischaracterized the opinions of PA Miori and Dr. Hailoo and substituted his lay opinion for them.  *Id.*

For claims filed on or after March 27, 2017, such as Dwayne's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources."  *Angela H.-M. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 4486320, at *4 (W.D.N.Y. 2020) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) (internal quotation marks omitted).  Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he] finds the medical opinions in the case record."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The ALJ is always required to "explain how [he] considered the supportability and consistency factors" because they are "the most important factors,"

and he "may, but [is] not required to, explain how [he] considered the [remaining] factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, PA Miori opined that Dwayne was a "candidate for a sedentary profession," and he encouraged Dwayne "to look into training programs for jobs which would not entail heavy lifting or repetitive movement." Docket Item 6 at 492 (repeated at 614). The ALJ found PA Miori's opinions to be "persuasive only in part." *Id.* at 27.

As to the consistency factor, the ALJ found that PA Miori's opinions were "only partially consistent with and supported by the evidence of the record as a whole." *Id.* The ALJ acknowledged that Dwayne "experienced neck, lower back, and bilateral wrist pain from his cervical radiculopathy and mild-to-moderate degenerative changes of the spine with numbness of the hands, a reduced range of back and neck motion, and an antalgic or slowed gait at times." *Id.* But he also noted "that EMG findings revealed only mild neuropathy of the wrists[;] that [Dwayne] often appeared in no acute distress with full strength of the extremities, full grip strength, and a normal gait[;] that he reported improvement in pain with medication[;] and that he admitted to a consultative examiner [that he] could perform household chores and daily activities." *Id.* (citing Docket Item 6 at 304-16, 325-858, 896-930).

As to the supportability factor, the ALJ found that the medical evidence "supports [PA] Miori's opinions that [Dwyane] could not lift heavy equipment and that he had some restriction in performing repetitive postural motions," but he also found that "this evidence also supports greater standing and walking ability than suggested by a sedentary exertional level as opined here." *Id.* And the ALJ noted that PA Miori "did not provide any significant explanation or reasoning to support his conclusions, and that he

4

failed to support his opinions with clinical findings." *Id.* "Even so," the ALJ concluded, PA Miori's "opinions hold some persuasive value as he[] personally treated and examined [Dwayne]." *Id.*

The ALJ likewise found "[t]he opinions of consultative examiner [Dr.] Hailoo" to be "persuasive in part." Docket Item 6 at 27. Dr. Hailoo opined that Dwayne "should avoid walking on unprotected heights and uneven surfaces secondary to imbalance" and that he "has moderate limitations to prolonged standing, prolonged walking, climbing stairs, heavy lifting, heavy carrying, and prolonged sitting." *Id.* at 481. The ALJ found that Dr. Hailoo's opinions were "only partially consistent with and supported by the evidence of record as a whole . . . ." *Id.* at 27 (citing Docket Item 6 at 304-16, 325-858, 896-930). He noted that the medical records evidenced "full strength of the extremities . . . and a normal gait," and he observed that because Dr. Hailoo examined Dwayne only once, Dr. Hailoo's "opinions are not informed by a longitudinal treatment history." *Id.* The ALJ concluded that "[w]hile this evidence supports Dr. Hailoo's opinions in large part, the evidence of record supports greater standing, walking, and sitting ability than suggested here by Dr. Hailoo." *Id.*

The ALJ thus properly considered the required regulatory factors when evaluating PA Miori's and Dr. Hailoo's opinions. *See Angela H.-M. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 4486320, at *6 (W.D.N.Y. 2020) ("Although the ALJ did not specifically use the words 'supportability' and 'consistency' in discussing Dr. Bing's opinion, it is clear from the record that the ALJ found his opinion to be inconsistent and not supported by other evidence in the record, including the historical records showing a significant work history but some memory problems."). Not only did the ALJ explicitly

address the supportability and consistency factors as to both providers' opinions, but he also cited specific medical evidence supporting his conclusions. *See* Docket Item 6 at 27. And after the ALJ addressed both those required factors in some detail, he went on to address other factors listed in sections 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5), such as Dwayne's relationship with PA Miori and Dr. Hailoo. *See id.* The ALJ therefore did not err in his assessment of PA Miori's and Dr. Hailoo's opinions.

Dwayne also argues that the ALJ's RFC[4] determination is inconsistent with PA Miori's opinion that Dwayne needed to avoid repetitive movements. Docket Item 8-1 at 10. But for several reasons, that argument misses the mark.

First, PA Miori did not say that Dwayne could not perform a job that required repetitive movements; rather, he simply encouraged Dwayne to look for jobs without them. *See* Docket Item 6 at 492 (repeated at 614). Dwayne's suggestion that PA Miori's recommendation about a job search constituted a meaningful statement about the impact of Dwayne's impairments on his ability to perform work-related functions reads too much into PA Miori's words. *See Jessica Lynn J. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 17494109, at *4-5 (W.D.N.Y. 2022) (noting that "medical opinions" under sections 404.1513(a)(2) 416.913(a)(2) require both an "assessment of [the claimant's] functional limitations" and "useful guidance" from the provider as to how they arrived at that assessment).

---

[4] A claimant's residual functional capacity ("RFC") is "the most work a claimant can do despite limitations from an impairment and/or its related symptoms." *Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 499, 503 (W.D.N.Y. 2020) (quoting *Farnham v. Astrue*, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011)) (internal quotation marks and citation omitted).

And even if PA Miori meant to opine that Dwayne had to avoid repetitive movements, the RFC incorporated that opinion by limiting Dwayne to work that would require him to reach overhead with both arms only occasionally and to use both his hands to finger and manipulate only frequently.[5]  Docket Item 6 at 23-24.  What is more, an "ALJ's RFC conclusion need not perfectly match any single medical opinion in the record," *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) and *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)), and an ALJ "has the discretion to discount a medical opinion . . . due to its vagueness or ambiguity." *Jessica Lynn J. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 17494109, at *5 (W.D.N.Y. 2022) (quoting *Alexander v. Comm'r of Soc. Sec.*, 2020 WL 5642184, at *5 (W.D.N.Y. Sept. 22, 2020)) (internal quotation marks omitted).  So even if the RFC here did not account for all PA Miori's limitations, that would not have been error.

At their core, Dwayne's arguments are a disagreement with the ALJ's conclusions about what the medical evidence and opinions said Dwayne could and could not do.  The ALJ explained why he found that Dwayne had "greater standing, walking, and sitting ability" than what was opined by PA Miori and Dr. Hailoo.  *See* Docket Item 6 at 27.  The ALJ provided the reasoning behind the postural limitations in

---

[5] "Occasionally" means from "very little to one-third of the time," and "frequently" means from "one-third to two-thirds of the time."  *See* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985).  In contrast, repetitive movements are those that a claimant performs constantly.  *See Colgrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 196 (W.D.N.Y. 2005) (discussing how the job of a semi-automatic sewing machine operator "requires constant and repetitive reaching, handling, and fingering of objects.").

7

the RFC.[6]  See id. at 28 ("Given [Dwyane's] cervical spine radiculopathy along with his mild neuropathy of the bilateral wrists tempered by his generally intact upper extremity strength and grip strength, [Dwyane] could frequently perform fine manipulation with the bilateral upper extremities.  Due to his reduced range of neck motion and cervical radiculopathy, [Dwyane] could occasionally reach overhead with the bilateral upper extremities.").  And the ALJ addressed the factors that the regulations required him to address and more.  Therefore, because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," the ALJ's RFC determination was supported by substantial evidence, and this Court may not second-guess it.  Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).

---

[6] The ALJ concluded that Dwayne was capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> Dwayne could occasionally lift and carry 20 pounds, and [he] could frequently lift and carry 10 pounds.  [He] could stand and walk for six hours in an eight-hour day, and [he could] sit for six hours in an eight-hour day.  [He] could frequently perform fingering and gross manipulation with the bilateral upper extremities.  [He] could occasionally reach overhead with the bilateral upper extremities.  [He] could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, and crouch, and occasionally crawl.  [He] must avoid hazards such as heights and moving machinery.

Docket Item 6 at 23-24.

**<u>CONCLUSION</u>**

Although this Court has sympathy for Dwayne and the hardships that must stem from the impairments he experiences, the ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, for the reasons stated above, Dwayne's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:    January 20, 2023
          Buffalo, New York

                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE